**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**
MAR 0 4 2008
NANCY MAYER WHITTINGTON, CLERK
U S DISTRICT COURT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 08-010** |
| | : | **FILED UNDER SEAL** |
| v. | : | |
| | : | |
| **HARRY PHILLIP ZAKAS,** | : | |
| | : | |
| Defendant. | : | **SEALED** |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, defendant **HARRY PHILLIP ZAKAS** agrees and stipulates as follows:

### WIRE FRAUD

Defendant **HARRY PHILLIP ZAKAS ("PHILLIP ZAKAS")** was the founder of Intelli7, Inc ("Intelli7"), which created software to analyze multiple levels of network traffic and detect any unauthorized intrusions without effecting the speed or availability of the network. Intelli7 was incorporated in Delaware on September 16, 2003 and maintained offices in the District of Columbia. Defendant **PHIILIP ZAKAS** was the Chief Executive Officer and President of Intelli7 until July 2006.

Novak Biddle Venture Partners ("Novak Biddle") is a venture capital firm that invests funds on behalf of universities and other clients in early stage technology companies, such as Intelli7. In Ma y 2004, it made an initial investment of $500,000 into Intelli7. By July 2006, it had provided a total of $6,500,000 to Intelli7. Novak Biddle had two seats on the Intelli7 Board of Directors. Defendant **PHILLIP ZAKAS** and another Intelli7 employee also had seats on the Board of Directors.

At the time of Novak Biddle's initial investment into Intelli 7, defendant **PHILLIP ZAKAS** entered into a formal employment agreement that called for defendant **PHILLIP ZAKAS** to receive a base salary as compensation. In addition, defendant **PHILLIP ZAKAS** was eligible to receive bonus payments if the Board of Directors determined that certain objectives had been met. There was no provision in the agreement that permitted defendant **PHILLIP ZAKAS** to use Intelli7 funds for personal expenses, including his housing expenses. In 2005 and 2006, defendant **PHILLIP ZAKAS** received $192,210.42 and $201,751.25 in compensation, respectively.

From on or about September 26, 2005 to on or about May 15, 2006, defendant **PHILLIP ZAKAS** embezzled approximately $507,385 from Intelli7. Defendant **PHILLIP ZAKAS** misappropriated these funds in several ways. First, he utilized Intelli7's ATM/Debit cards ("Bank Cards") associated with two different banks to make unauthorized transactions for his personal use and benefit. For example, from January 2006 to May 2006, defendant**PHILLIP ZAKAS** utilized Intelli7 bank cards to pay $157,875.38 in charges that he incurred while staying at the Four Seasons Hotel in the District of Columbia. Defendant **PHILLIP ZAKAS** also utilized Intelli7 bank cards to pay bills at nightclubs in the District of Columbia. Often, these bills would be for several thousands of dollars. For example, on December 11, 2005, defendant **PHILLIP ZAKAS** used an Intelli7 bank card to pay for a $5,042.40 bill from Eyebar. From December 2005 to January 2006, defendant **PHILLIP ZAKAS** used Intelli7 bank cards to pay $23,489.40 in charges that he incurred at Eyebar. From January 2006 to May 2006, defendan**PHILLIP ZAKAS** used Intelli7 bank cards to pay for $21,831.40 in charges that he incurred at a nightclub called MCCXXIII. From December 2005 to May 2006, defendant **PHILLIP ZAKAS** used Intelli7 bank cards to pay for $32,968.40 in charges that he incurred at a nightclub called K Street.

Defendant **PHILLIP ZAKAS** also utilized Intelli7 bank cards to pay for clothing and other attire at stores such as Barneys, Saks Fifth Avenue, and Tickled Pink for himself and W.G., his girlfriend at the time. For example, from September 2005 to April 2006, defendant **PHILLIP ZAKAS** used Intelli7 bank cards to pay for $27,875.13 in charges that he incurred at Saks Fifth Avenue. Some of these charges were incurred at Saks Fifth Avenue stores in the District of Columbia.

In addition, defendant **PHILLIP ZAKAS** embezzled Intelli7 corporate funds by initiating two wire transfers from the Intelli7 account at Bank of Georgetown. On May 1, 2006, defendant **PHILLIP ZAKAS** caused $34,000 to be wired from the Bank of Georgetown account to PNC Bank account in the name of defendant **PHILLIP ZAKAS.** Defendant **PHILLIP ZAKAS** utilized the wired funds for his personal use and benefit.

On the same day, May 1, 2006, defendant **PHILLIP ZAKAS** caused $20,000 to be wired from the Intelli7 Bank of Georgetown account to Wachovia Bank account in the name of "W.G." The funds that were wired to "W.G." were utilized by her for the personal use and benefit of defendant **PHILLIP ZAKAS** and/or "W.G."

In May 2006, after an Intelli7 office manager discovered the unauthorized personal transactions conducted by defendant **PHILLIP ZAKAS,** defendant **PHILLIP ZAKAS** resigned from the Intelli7 Board of Directors and from his position as Chief Executive Officer. On July 14, 2006, defendant **PHILLIP ZAKAS** signed a written agreement promising to repay Intelli7 for his "unauthorized personal charges."

**TAX EVASION**

In April 2004, defendant **PHILLIP ZAKAS** completed a federal income taxes Internal Revenue Form W-4, an Employee's Withholding Allowance Certificate, in which he claimed 29 exemptions. This eliminated any withholdings from his pay. In September 2005, defendant **PHILLIP ZAKAS** sent an email to Intelli7's Human Resource Department, reiterating that no taxes should be withheld from his pay. As a result, no federal income taxes were withheld from defendant **PHILLIP ZAKAS'** pay for calendar years 2005 and 2006.

In addition to ceasing income tax withholding from his pay, defendant **PHILLIP ZAKAS** failed to filed federal and District of Columbia income tax returns for calendar years 2005 and 2006. As a result, he failed to pay at least $285,000 in taxes to the Internal Revenue Service and at least $77,252 to the District of Columbia's Office of Tax and Revenue.

_____
**HARRY PHILLIP ZAKAS**